**William L. Larkins, Jr.**, OSB #812882
wlarkins@larkinsvacura.com
**Bridget M. Donegan**, OSB #103753
bdonegan@larkinsvacura.com
**Larkins Vacura LLP**
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
Telephone:  503-222-4424
Facsimile:  503-827-7600

Attorneys for Defendants U.S. Bank National
Association, N.D. and Stephanie Buckley

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| LAWRENCE JAMES SACCATO, | |
| Plaintiff, | Case No. 6:13-CV-00173-AA |
| v. | DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| U.S. BANK NATIONAL ASSOCIATION, N.D., STEPHANIE BUCKLEY, CHRISTOPHER KAYSER, DOES 1 THROUGH 5, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Lawrence James Saccato ("Saccato") brought this action against U.S. Bank

National Association, N.D. ("U.S. Bank") and its employee Stephanie Buckley ("Buckley") for

violating the Fair Credit Reporting Act ("FCRA") and federal civil rights laws.  Saccato's claims

are based on alleged conduct by the bank and Buckley during the bank's defense of FCRA claims brought by Saccato in 2010 ("the underlying litigation"). *See Saccato v. Davis Law Firm, et al.*, U.S. District Court Case No. 6:10-cv-06244-HO. Saccato asserts that U.S. Bank and Buckley violated the FCRA by obtaining plaintiff's credit information during the underlying litigation and by releasing plaintiff's personal information to U.S. Bank's litigation counsel, co-defendant Christopher Kayser, and ultimately to the public through court filings. Saccato also claims that Buckley unlawfully conspired with Kayser to violate Saccato's civil rights.

All of Saccato's claims against U.S. Bank and Buckley fail as a matter of law. First, Saccato's FCRA claims are barred by claim preclusion, as he made identical arguments in the underlying litigation. Second, even if claim preclusion does not bar Saccato's FCRA claims, there is no genuine issue of material fact as to U.S. Bank's and Buckley's compliance with the FCRA. They are therefore entitled to summary judgment on those claims. Finally, there is no genuine issue of fact regarding the applicability of civil rights statutes to this case. U.S. Bank and Buckley respectfully request that the Court enter judgment in favor of U.S. Bank and Buckley and against plaintiff on each of his claims.

## II. REQUEST FOR JUDICIAL NOTICE

U.S. Bank and Buckley request that this Court take judicial notice of the record in the underlying litigation, *Saccato v. Davis Law Firm, et. al.*, U.S. District Court Case No. 6:10-cv-06244-HO. Under Federal Rule of Evidence 201, this Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." A fact fits that description if it is contained in a public record. *See Reynolds v. Giusto*, 2009 US Dist LEXIS 72963, *2 (D. Or. 2009) (so holding). This Court must take judicial notice of such facts

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 2
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

if requested by a party. Fed. R. Evid. 201(d). The record in the underlying litigation is a matter of public record and is available on PACER. Because the accuracy of that source "cannot reasonably be questioned," the Court should take judicial notice of the record in the underlying litigation.

## III. FACTUAL BACKGROUND

Plaintiff sued U.S. Bank in August 2010 for alleged violations of the FCRA, asserting that he was not the owner of credit card accounts held in his name and the bank had violated the FCRA by reporting his disputed accounts to credit reporting agencies. (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt 1.) During the litigation of that case, Kayser filed a declaration by Buckley but inadvertently failed to redact Saccato's personal information. (*See* Dkt. 16 (Defendant Christopher Kayser's Memorandum of Law in Support of Defendant's Motion for Summary Judgment) (describing facts of underlying litigation).) Ultimately, the District Court granted U.S. Bank's Motion for Summary Judgment and dismissed Saccato's claims with prejudice. (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt. 100.) The Ninth Circuit affirmed. *Saccato v. Davis Law Firm*, 2012 U.S. App. LEXIS 24245 (9th Cir. Case No. 12-35133, Nov. 13, 2012).

After the final judgment was entered in the underlying litigation, Saccato brought this case against U.S. Bank and Buckley, alleging that their earlier conduct—obtaining plaintiff's credit report and providing Kayser with plaintiff's personal information—violated the FCRA and, in Buckley's case, violated federal civil rights laws. Defendants U.S. Bank and Buckley request the Court enter judgment against plaintiff and in their favor as a matter of law.

## IV. ARGUMENT

A.    **Legal Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if there is no

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 3
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court must view all the facts and reasonable inferences in favor of the nonmoving party. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir. 1998). The moving party must show the absence of a material factual dispute and the nonmoving party cannot rebut such a showing by relying merely on its pleadings. *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir. 2002). Rather, to defeat summary judgment, the nonmoving party must submit *evidence* showing a genuine issue of material fact for trial. *Id.* That evidence must be "of sufficient caliber and quantity to support a jury verdict for the nonmovant." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989). Accordingly, no mere scintilla of evidence, or evidence that is only colorable or barely probative, will suffice. *Id.* Evidence is also insufficient to defeat summary judgment if the factual dispute it presents "would not affect the outcome of the suit." *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir. 2001); *see also Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000) (substantive law governing a claim or defense determines what facts are material to it). Finally, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary." *Blue Ridge,* 142 F.3d at 1147.

**B.    Saccato's FCRA claims against U.S. Bank and Buckley fail as a matter of law.**

Saccato made identical FCRA arguments against the bank in the underlying litigation. As a result, claim preclusion bars him from raising those claims here. In any event, Saccato's FCRA claims fail on their merits because he cannot raise a genuine issue of material fact with respect to U.S. Bank's or Buckley's compliance with the FCRA.

//

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                        Page 4
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1. ***Claim Preclusion Bars Saccato's FCRA Claims***

Claim preclusion bars "an action on any claims that were raised *or could have been raised* in a prior action when there is: '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" *Zavala v. Curtright*, 2012 U.S. Dist. LEXIS 161108, 6-8 (D. Or., Nov. 9, 2012) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)) (emphasis added). Those elements are present here. In the underlying litigation, Saccato made the same FCRA arguments in summary judgment motions that he makes here, and although he did not properly assert FCRA claims in his complaint in the underlying litigation, he could have amended his complaint to do so. The parties are the same, except for Buckley, who is in privity with U.S. Bank. Finally, the underlying litigation was resolved on its merits when the Ninth Circuit affirmed the District Court's summary judgment in the bank's favor. Saccato cannot raise his FCRA claims again here.

a. **Identity of Claims**

Saccato makes essentially two FCRA claims against U.S. Bank and Buckley. He first asserts that U.S. Bank and Buckley violated the FCRA by allegedly "pull[ing] the Plaintiff's credit report under false pretenses after litigation has commenced[,]" on February 1, 2011. (Dkt. 1, ¶¶ 8, 47.) Saccato made the identical argument in the underlying litigation. His first motion for summary judgment was based solely on the argument that he was "entitled [to] summary judgment because Defendant [U.S. Bank] has obtained Plaintiff's [credit] information under false pretenses" in violation of 15 U.S.C. § 1691(q). (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt. 58.) In his supporting affidavit, he clarified that the allegedly wrongful credit pull took place on February 1, 2011. (*Id.*) He also attached an exhibit to his motion showing what he asserted to be evidence that U.S. Bank obtained his credit report on that date. (*Id.*) As here, his

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 5
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

argument appeared to be that the alleged credit pull was unlawful simply because it took place "during litigation." (*Id.*)

Saccato also claims that U.S. Bank and Buckley violated the FCRA by releasing his social security number and bank account number to Kayser and to the public in the underlying litigation without redaction or truncation, once on September 30, 2011, and several times on November 7, 2011. (Dkt. 1, ¶ 9-11, 49-50.) Again, he made the identical argument in the underlying litigation. In his third motion for summary judgment, Saccato argued that the bank (through Buckley) violated the FCRA by releasing documents containing "sensitive information including [s]ocial [s]ecurity and multiple account numbers" in violation of several laws, including the FCRA, on September 30, 2011, and 36 times on November 7, 2011. (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt. 74, ¶ 4-7.) On that basis, plaintiff argued that he was entitled to summary judgment.

Thus, in dispositive motions in the underlying litigation, Saccato made FCRA arguments identical to those he makes here, based on the same factual circumstances. As a result, those claims should be barred by claim preclusion. *Adam Bros. Farming, Inc. v. Cty of Santa Barbara*, 604 F.3d 1142, 1149 (9th Cir. 2010) (claims with "nearly identical" substance, "based on the same underlying factual circumstances" barred by claim preclusion; "[t]he particularities of [the plaintiff's] causes of action are irrelevant"). Although Saccato never amended his complaint properly to raise the claims, he asserted the claims as bases for summary judgment in his favor and presented evidence in support. (*See Saccato*, Case No. 6:10-cv-06244-HO, Dkts. 58, 74.)

In any case, claim preclusion bars "not only claims actually litigated in a prior proceeding, but also claims that *could have* been litigated." *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) (emphasis added). Plaintiff amended his

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 6
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

complaint near the end of February 2011, after the bank allegedly obtained his credit report, but he did not add that allegation to his amended complaint. (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt. 21.)  Nor did he later amend his complaint to add that claim or the claims related to the release of his personal information.  By failing to amend his complaint to add the FCRA claims asserted in his summary judgment motions, plaintiff risked that the judgment in the underlying litigation would bar his claims in the future. *See Adam Bros.*, 604 F.3d at 1149 n.5 (so stating). Because he made identical arguments in the underlying litigation, and could have amended his complaint to raise the claims properly, they are subject to claim preclusion here.

### b.    Final Judgment on the Merits

On January 17, 2012, the District Court in the underlying litigation granted U.S. Bank's Motion for Summary Judgment, denied Saccato's Motions for Summary Judgment, and dismissed the case with prejudice. (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt. 100.)   That decision was affirmed by the Ninth Circuit. *Saccato v. Davis Law Firm*, 2012 U.S. App. LEXIS 24245 (9th Cir. Case No. 12-35133, Nov. 13, 2012).  The underlying litigation in which Saccato made these same arguments was finally adjudicated on its merits.

### c.    Identity or Privity of Parties

The named parties in this case are identical to those in the underlying litigation with the exception of Buckley.  For purposes of claim preclusion, Buckley is in sufficient privity with U.S. Bank such that Saccato's previously raised claims are barred as to her as well.  Parties are in privity if there is "substantial commonality of their interests." *Miller v. Wright*, 705 F.3d 919, 928 (2013).  Privity exists in this context "where the nonparty had a significant interest and participated in the prior action, and where the interests of the nonparty and party are so closely aligned as to be virtually representative." *Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l*

*Planning Agency*, 322 F.3d 1064, 1081-1082 (9th Cir. Cal. 2003) (internal quotation marks and citations omitted).

Here, Saccato alleges that Buckley violated the FCRA through her conduct on behalf of U.S. Bank, as its employee. Having already alleged that U.S. Bank wrongfully performed that same conduct in the underlying litigation, Saccato cannot avoid claim preclusion by alleging the same claims against its employee, Buckley. *See Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1247 (9th Cir. 1998) ("It is the identity of interest that controls in determining privity, not the nominal identity of the parties.") (internal quotation marks and citation omitted). Buckley's interests in defending against these identical claims were fully represented by the bank in the underlying litigation, because the bank would be the party ultimately liable for Buckley's conduct as its employee. *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("[A] nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit.") (internal quotation marks and citations omitted).

Furthermore, Buckley was directly involved in the underlying litigation on behalf of U.S. Bank. She filed a declaration in support of the bank's defense and Saccato deposed her on the FCRA issues raised in the current lawsuit. (*Saccato*, Case No. 6:10-cv-06244-HO, Dkt. 71 (Second Amended Declaration); *see also id.* at Dkt. 86, p. 5 (Plaintiff's Amended Memorandum in Support of Motion for Summary Judgment (under seal) (describing Buckley's deposition testimony).) There is sufficient privity between U.S. Bank and Buckley to bar Saccato from bringing claims against Buckley as U.S. Bank's employee that he could have raised against U.S. Bank in the underlying litigation.

In sum, Saccato's complaint raises FCRA claims identical to those he argued in the underlying litigation, which he could have properly raised in that litigation, which was brought

against the same parties and was adjudicated on its merits. Those claims are barred by claim preclusion, and U.S. Bank and Buckley are entitled to summary judgment.

### 2. *U.S. Bank's Credit Inquiry Complied with the FCRA*

Even if claim preclusion does not bar Saccato's claim that U.S. Bank and Buckley violated the FCRA by obtaining plaintiff's credit report on February 1, 2011, that claim fails as a matter of law because the bank's conduct was lawful under the FCRA. On that date, as described in greater detail below, the bank performed a routine "account review inquiry" into Saccato's credit as part of an automated process that included all checking-account holders to determine whether their account terms remained satisfied. (Decl. of Richard Martino in Support of Defendants U.S. Bank's and Buckley's Motion for Summary Judgment ("Martino Decl."), ¶¶ 7-8.) The FCRA specifically permits obtaining credit information under those circumstances. 15 U.S.C. § 1681b(a)(3)(F)(ii). There is no genuine issue of fact regarding U.S. Bank's or Buckley's compliance with the FCRA in obtaining Saccato's credit information.[1]

The FCRA provides three permissible purposes for obtaining a consumer's credit information from a consumer reporting agency. *See* 15 U.S.C. § 1681b(a) ("[A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other[.]"). One of the permissible purposes for accessing credit information is "a legitimate business need for the information to review an account to determine whether the consumer continues to meet the terms of the account." *Id.* at § 1681b(a)(3)(F)(ii). Under the text of that

---

[1]     Saccato has no basis for his claim that Buckley was in any way involved in the February 1, 2011, inquiry into his credit information. In addition to the reasons stated in the text, his claim fails against Buckley because he does not and cannot present evidence from which a juror could find that Buckley took any of the action he alleges. His conclusive, unsupported statements are insufficient to withstand summary judgment. *See Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir. 2002) (plaintiff must present evidence to defeat summary judgment and may not rely solely on pleadings).

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 9
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

subsection, a business may access its current account-holding customer's credit information for the purpose of determining whether the account terms remain satisfied. The Federal Trade Commission has explained that the subsection "provides a permissible purpose to banks that have a legitimate business need to consult a current customer's consumer report in order to determine whether the terms of a consumer's current non-credit (savings or checking) accounts should be modified." Fed. Trade Comm., 40 Years of Experience with the Fair Credit Reporting Act: an FTC Staff Report with Summary of Interpretations, 48 (July 2011) (excerpted and attached hereto as Exhibit A).[2]

There is no question of fact that the bank's inquiry into Saccato's credit on February 1, 2011, was precisely the conduct permitted by section 1681b(a)(3)(F)(ii). On that date, U.S. Bank performed a periodic "account review inquiry" into the credit information of all its current checking-account customers, including Saccato. (Martino Decl., ¶¶ 5, 7.) Account review inquiries do not access a customer's full credit report, do not affect the customers' credit, and do not appear to third parties who obtain customers' credit reports—the inquiry is displayed only when a customer checks his or her own credit report. (*Id.*) Account review inquiries allow the bank to access credit data of its customers to ensure that account terms are satisfied, protecting the bank's interests without affecting its customers' credit. (*Id.* at ¶¶ 5-8.)

Each U.S. Bank checking account is "subject to the terms of the bank's internal treatment of a customer's delinquency." (*Id.* at ¶ 3). Those terms ("risk-based terms") include, for example, whether the bank will authorize or reject an attempt by a customer to overdraft a checking account. (*Id.*) Risk-based terms of some accounts may need to be altered depending on the credit risk posed to the bank by the account holder. (*Id.* at ¶ 4.) Credit information

---

[2]    The report is available online at www.ftc.gov/os/2011/07/110720fcrareport.pdf.

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

obtained through account review inquiries is used to determine the credit risk posed by a customer and, in turn, whether risk-based terms need to be altered on the customer's account. (*Id.* at ¶¶ 5-6.)

U.S. Bank has "a legitimate business need" to limit its exposure to financial risk on the checking account services that it provides, including overdraft protection. To satisfy that need, it makes limited inquiries into the credit information of all its checking account customers to determine whether any account terms need to be changed—*i.e.*, "to determine whether the consumer continues to meet the terms of the account." *See* 15 U.S.C. § 1681b(a)(3)(F)(ii). On February 1, 2011, U.S. Bank made an account review inquiry into Saccato's credit information for that purpose. (Martino Decl., ¶¶ 7-8.) There can be no genuine issue of fact as to whether the bank's conduct was permissible under the FCRA.

Saccato alleges that U.S. Bank and Buckley "pulled [his] credit report under false pretenses after litigation has commenced," presumably on the theory that his credit information was obtained for an impermissible purpose related to the underlying litigation.[3] However, the evidence demonstrates plainly that that was not the case. (*See* Martino Decl. ¶¶ 3-8.) The only evidence, which Saccato cannot dispute, is that the bank performed a routine inquiry into his credit information because he held a checking account with the bank. (*Id.* at ¶ 7.) Furthermore, Saccato's implication that the FCRA prohibits the bank from accessing Saccato's credit

---

[3]        Saccato brings his claim under 15 U.S.C. § 1681q, which creates *criminal* liability for "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." Saccato's claim fails as a matter of law because there is no private right of action under 15 U.S.C. § 1681q, the only statute he cites; defendants do not intend to waive that argument by focusing in the text on the ultimate merits of Saccato's position. The merits-based argument presumes Saccato to be advancing under the civil cause of action provided by the FCRA for failure to comply with the requirements of the FCRA, including obtaining a consumer report for impermissible purposes. 15 U.S.C. § 1681n (willful noncompliance), § 1681o (negligent noncompliance).

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                          Page 11
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

information solely because Saccato had sued the bank is unsupported and meritless. As described, U.S. Bank had a permissible purpose for inquiring into Saccato's credit information. No law shielded Saccato from that inquiry simply on the basis that he had sued the bank.

There is no genuine issue of fact as to U.S. Bank's and Buckley's compliance with the FCRA. On February 1, 2011, U.S. Bank performed a routine, limited inquiry into the credit of all its checking account customers, including Saccato, to determine whether the terms of those accounts remained satisfied. There is no genuine issue of fact as to whether that inquiry complied with the FCRA and U.S. Bank and Buckley therefore are entitled to judgment as a matter of law against Saccato.

### 3.    *The FCRA Does Not Require Banks to Redact or Truncate Information*

Saccato asserts that U.S. Bank and Buckley violated the FCRA by providing Kayser documents that included his social security number and bank account number, to aid in the bank's defense in the underlying litigation. Kayser inadvertently filed the documents without redaction as exhibits to a declaration by Buckley attesting that Saccato in fact held several accounts with U.S. Bank. (*See* Declaration of Christopher J. Kayser in Support of Defendant's Motion for Summary Judgment, Dkt. 17, ¶ 3-4 (describing events in the underlying litigation).) The mistake was caught quickly by the Court, Kayser filed a motion to seal the unredacted documents, and then filed redacted versions. (*Id.*) It appears to be Saccato's position that the FCRA prohibited U.S. Bank and Buckley from providing Kayser with unredacted documents in the first instance. That is not the case.

Saccato does not identify the section of the FCRA that purportedly would prohibit such conduct, nor could he. Under 15 U.S.C § 1681c(g), merchants must truncate or redact credit-card information on receipts provided at the point of sale: "[N]o person that accepts credit cards

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 12
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." That subsection governs the printing of electronically-generated receipts for credit and debit card transactions. *See* 15 USC § 1681c(g)(2) (limiting application "to receipts that are electronically printed"). There is no comparable provision applicable to banks, particularly in their exchange of documents with litigation counsel. There is no genuine issue of material fact as to U.S. Bank's or Buckley's compliance with the FCRA in providing Kayser with documents without redacting Saccato's personal information.

**C.** **Plaintiff's claims against Buckley under 42 U.S.C. §§ 1983, 1985, and 1986 fail as a matter of law.**

Saccato claims that Buckley violated 42 U.S.C. § 1983 by conspiring with Kayser "to violate plaintiff's rights." (Compl. ¶ 85.) Also through a supposed conspiracy with Kayser, Buckley is alleged to have violated Saccato's rights under 42 U.S.C. § 1985(3) by depriving Saccato of "the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory the equal protection of the laws." (Compl. ¶ 86.) Finally, Saccato alleges that Buckley violated his rights under 42 U.S.C. § 1986 "by having knowledge" of imminent violations of section 1985 and failing to prevent the violations from occurring. (Compl. ¶ 87.) Buckley is entitled to summary judgment on those claims.

For the same reasons put forward in Kayser's memorandum in support of his motion for summary judgment, Saccato's civil rights claims fail as a matter of law against Buckley as well. (*See* Dkt. 16, p 5-8 (Defendant Christopher Kayser's Memorandum of Law in Support of Defendant's Motion for Summary Judgment) (citing cases).) First, it is indisputable that, just as Saccato has alleged, Buckley was acting as a private employee for U.S. Bank, barring any claim

DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S                    Page 13
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

under section 1983. *West v. Atkins*, 108 S. Ct. 2250, 2254-55 (1988) (claim under section 1983 requires showing "that the alleged deprivation was committed by a person acting under color of state law"). Second, the undisputed evidence is that the submission of Buckley's unredacted declarations (the only joint conduct by Kayser and Buckley) was inadvertent and not intended to deprive him of any legal rights or protections, barring any claim under section 1985. (Dkt. 17, ¶ 3-4 (Declaration of Christopher J. Kayser in Support of Defendant's Motion for Summary Judgment)); *see United Brotherhood of Carpenters and Joiners of Am. v. Scott*, 103 S. Ct. 3352, 3356 (1986) (claim under section 1985 requires proof of conspiracy "for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws"). Finally, Saccato has no section 1986 claim because he has no valid claim under section 1985. *McCalden v. Cali. Library Assoc.*, 955 F.2d 1214, 1223 (9th Cir. 1992) ("[A] claim under § 1986 can be stated only if the complaint contains a valid claim under § 1985"). Saccato cannot raise a genuine issue of fact as to Buckley's compliance with 42 U.S.C. §§ 1983, 1985, or 1986.

## V. CONCLUSION

For the foregoing reasons, defendants U.S. Bank and Buckley request that this Court grant summary judgment to U.S. Bank and Buckley on all claims against them.

Dated: May 21, 2013.

LARKINS VACURA LLP

/s/ Bridget M. Donegan
William L. Larkins, Jr., OSB #812882
wlarkins@larkinsvacura.com
Bridget M. Donegan, OSB #103753
bdonegan@larkinsvacura.com
Attorneys for Defendants U.S. Bank and Stephanie
Buckley

# 40 YEARS OF EXPERIENCE
## WITH THE FAIR CREDIT REPORTING ACT

AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS

July 2011 | Federal Trade Commission

40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT

2.  CURRENT EMPLOYEES

An employer may obtain a consumer report on a current employee, provided that the employer has obtained prior, written authorization, because "promotion, reassignment, or retention as an employee" is included in the definition of "employment purposes" (section 603(h)).[128]

3.  GRAND JURORS

The fact that grand jurors are usually paid a stipend for their service does not provide a district attorney's office a permissible purpose for obtaining consumer reports on them, because the consumer does not seek such service, which is a duty.[129]

**Section 604(a)(3)(C)** allows a CRA to furnish consumer reports to a person which it has reason to believe "intends to use the information in connection with the underwriting of insurance involving the consumer."

1.  PERMISSIBLE PURPOSE EXISTS FOR "UNDERWRITING OF INSURANCE"

An insurer may obtain a consumer report to determine whether or not to issue a policy to the consumer, the amount and terms of coverage, the duration of the policy, the rates or fees charged, or whether or not to renew or cancel a policy, because these are all "underwriting" decisions.[130] An insurance company has a permissible purpose to obtain a consumer report to determine whether existing policy holders qualify for a different premium upon renewal, because that is an "underwriting" decision.[131]

2.  PERMISSIBLE PURPOSE DOES NOT EXIST FOR EVALUATING INSURANCE CLAIMS

An insurer may not obtain a consumer report for the purpose of evaluating a claim (to ascertain its validity or otherwise determine what action should be taken), because permissible purposes relating to insurance are limited by this section to "underwriting" purposes.[132]

**Section 604(a)(3)(D)** allows a CRA to furnish consumer reports to a person which it has reason to believe "intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status."

1.  GENERAL

Any person charged by law with responsibility for assessing the consumer's eligibility for a government benefit (not only the agency directly responsible for administering the benefit) has a permissible purpose to obtain a consumer report.

2.  APPROPRIATE RECIPIENTS

A.  Financial status. A social services agency, required by law to consider a consumer's financial status in determining whether that consumer qualifies for social service benefits, has a permissible purpose to obtain a report on the consumer for that purpose. Similarly, government entities that are required by law to consider financial status in determining consumers' eligibility for assistance, and professional boards required by law to consider such information on applicants for admission to practice, have a permissible purpose to obtain a consumer report.[133]

46

    B. <u>Continuing eligibility for benefit</u>. A government agency has a permissible purpose to obtain a consumer report to determine a consumer's continuing eligibility for a benefit or to conduct a random check to confirm continued eligibility.[134]

    C. <u>Worker's compensation claims</u>. A state workers' compensation fund may have a permissible purpose to obtain consumer reports on consumers who submit claims to the fund if (a) insurance payments paid by the fund constitute a "benefit" and (b) the fund is required by law to consider the claimants' financial responsibility or status when deciding whether to make the payments.[135]

3.   INAPPROPRIATE RECIPIENTS

    A. <u>Persons not charged with eligibility determination</u>. No one other than the entity charged with the responsibility of determining a consumer's eligibility for a license or other benefit has a permissible purpose to obtain a consumer report under this provision. For example, a party competing for an FCC radio station construction permit would not have a permissible purpose to obtain a consumer report on the other competitor.[136]

    B. <u>Purposes not related to government license or benefit</u>. A state does not have a permissible purpose to obtain a consumer report of the officers, directors, or stockholders of a corporation submitting bids for a procurement contract, because the purpose for obtaining the report in those circumstances does not concern the consumer's eligibility for a state "license" or "benefit," but rather to assess the advisability of a commercial contractual relationship with a particular company.

**Section 604(a)(3)(E)** allows a CRA to furnish consumer reports to a person which it has reason to believe "intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation."

**Section 604(a)(3)(F)** allows a CRA to furnish consumer reports to a person which it has reason to believe "otherwise has a legitimate business need for the information (i) in connection with a business transaction that is initiated by the consumer or (ii) to review an account to determine whether the consumer continues to meet the terms of the account."

1.   RELATION TO OTHER SUBSECTIONS OF SECTION 604(a)(3)

    The issue of whether credit, employment, or insurance provides a permissible purpose is determined exclusively by reference to subsection (A), (B), or (C), respectively.[137] Subsection (F)(i) provides a permissible purpose to businesses other than creditors, employers, or insurers to obtain a consumer report for use in connection with a transaction the consumer initiates that is not more specifically covered by subsections (A), (B), or (C).

2.   "BUSINESS TRANSACTION"

    The term "business transaction that is initiated by the consumer" in section 604(a)(3)(F)(i) means a business transaction that is primarily for personal, family, or household purposes. This section does not cover business transactions that involve purely commercial purposes.[138]

40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT

3.  "LEGITIMATE BUSINESS NEED"

A.  <u>General</u>. Section 604(a)(3)(F)(i) provides a permissible purpose to obtain a consumer report on a consumer for use in connection with a transaction the consumer initiates from which he or she might expect to receive a benefit that is not more specifically covered by subsections (A), (B), or (C), where the report user has a legitimate business need for the information.

B.  <u>Apartment rental</u>. A landlord has a permissible purpose to obtain a consumer report on a consumer who applies to rent an apartment.[139]

C.  <u>Brokerage account</u>. The provision authorizes a CRA to provide a report on an individual who applies to open a brokerage account.[140]

D.  <u>Personal check</u>. A retailer has a permissible purpose to obtain a consumer report on a consumer who pays for merchandise (e.g., an automobile or TV set) by personal check.[141]

4.  LITIGATION IS NOT A PERMISSIBLE PURPOSE

A.  <u>General</u>. Litigation, whether threatened, possible, or ongoing, is not a "business transaction" and is not within the "legitimate business need" purpose provided by section 604(a)(3)(F)(i). However, parties considering litigation may have a permissible purpose for obtaining a consumer report if the transaction that gives rise to the potential litigation would provide a permissible purpose for obtaining a consumer report. For example, a party seeking to sue on a credit account would have a permissible purpose under section 604(a)(3)(A).[142]

B.  <u>Potential defendants</u>. This section does not provide parties considering litigation with a general permissible purpose to obtain reports on potential defendants to determine whether they are worth suing. Thus, there is no permissible purpose for a consumer report to be obtained on the potential defendant in a contemplated tort action.[143]

C.  <u>Attempt to locate wrongdoer or witness</u>. An insurance company attempting to locate an uninsured automobile driver who was responsible for an auto accident with one of the insurance company's insured does not have a permissible purpose for obtaining the uninsured driver's consumer report. Neither does a company hired by the insurance company to locate the uninsured driver have a permissible purpose. Similarly, a consumer report may not be obtained solely for locating a witness or for use in discrediting a witness at trial.[144]

5.  AUTOMOBILE DEALERSHIP

An automobile dealer does not have a permissible purpose to obtain a consumer report on a consumer who simply asks for information about vehicles and prices, because there is no "transaction … initiated by the consumer" at that point in time. For the same reason, the dealer will usually not have a permissible purpose when the consumer test drives one or more vehicles.[145] See also discussion in comment 604(a)(3)(A)-4D. The dealership would not have a permissible purpose under this provision to obtain a consumer report when a consumer pays for a vehicle in cash because it has no "legitimate business need" for the information.[146] However, the dealer would have a permissible purpose if it obtained the consumer's written instruction (comment 604(a)(2)-1) or the consumer offered to pay with a personal check (comment 604(a)(3)(F)-3D).

6.  "REVIEW" PURPOSES

Section 604(a)(3)(F)(ii) provides a permissible purpose to banks that have a legitimate business need to consult a current customer's consumer report in order to determine whether the terms of a consumer's current non-credit (savings or checking) accounts should be modified.[147] However, it

48

does not allow CRAs to provide businesses with consumer reports to "review" accounts in order to market other products or services.[148] As noted in comment 604(a)(3)(F)-1, subsection (F) does not apply to credit, insurance, and emplyment scenarios that are specifically covered by other subsections.

**Section 604(a)(3)(G)** allows CRAs to provide consumer reports to "executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards."

**Sections 604(a)(4)** and **604(a)(5)** permit child support authorities to obtain consumer reports on parents in connection with the assessment of child support obligations. One of the requirements for a child support enforcement agency to obtain a report is that it has to certify that it "has provided at least 10 days' prior notice to the consumer whose report is requested by certified or registered mail to the last known address of the consumer."

1. GENERAL

   Sections 604(a)(4) and 604(a)(5) permit child support authorities to obtain consumer reports on parents in connection with the assessment or modification of child support obligations.

2. NOTICE PROCEDURE

   Section 604(a)(4)(C) requires only that the child support authority notify the report subject (usually a non-custodial parent who owes child support) by certified or registered mail. It does not require the agency to procure a signed receipt or to follow any additional procedures, such as service of process that would be required to bring a lawsuit.[149]

**Section 604(a)(6)** permits the Federal Deposit Insurance Corporation and National Credit Union Administration to obtain consumer reports in connection with their duties as conservator, receiver, or liquidating agent for failed or failing financial institutions under applicable laws.

**Section 604(b)** sets forth provisions relating to consumer reports for employment purposes, imposing specific duties on CRAs and employers in this context.

1. SCOPE OF "EMPLOYMENT PURPOSES"

   Section 604(b)'s disclosure and authorization requirements apply where the consumer report is obtained for "employment purposes" even where the consumer is not technically an "employee" of the report user. See comment 603(h)-2.

2. SUSPECTED WORKPLACE WRONGDOING

   An exclusion from the definition of "consumer report" in sections 603(d)(2)(D) and 603(y) removes certain reports from the scope of the FCRA when they are provided to employers for the sole purpose of investigating suspected employee workplace misconduct. Section 603(y) sets forth the specific procedures and limitations applicable to such reports.

## CERTIFICATE OF SERVICE

I am over the age of 18 and am not a party to the within action.  I am employed in Multnomah County, State of Oregon, and my business address is 621 SW Morrison St., Suite 1450, Portland, Oregon 97205.

On May 21, 2013, I served the following document(s):

**DEFENDANTS U.S. BANK'S AND STEPHANIE BUCKLEY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

on the party or parties listed on the following page(s) in the following manner(s):

☐    **BY FEDERAL EXPRESS:**  For each party, I caused a copy of the document(s) to be placed in a sealed envelope and caused such envelope to be delivered by Federal Express to the street address(es) indicated on the attached service list.

☒    **BY FIRST-CLASS MAIL:**  For each party, I caused a copy of the document(s) to be placed in a sealed envelope and caused such envelope to be deposited in the United States mail at Portland, Oregon, with first-class postage thereon fully prepaid and addressed to the street address(es) indicated on the attached service list.

☐    **BY FACSIMILE:**   For each party, I caused a copy of the document(s) to be sent by facsimile to the facsimile number(s) indicated on the attached service list.  If this action is pending in Oregon state court, then printed confirmation of receipt of the facsimile generated by the transmitting machine is attached hereto.

☐    **BY E-MAIL:**  For each party, I caused a copy of the document(s) to be sent by electronic mail to the e-mail address(es) indicated on the attached service list.  If this action is pending in Oregon state court, then I received confirmation that the e-mail was received.

☐    **BY ECF:**  For each party, I caused a copy of the document(s) to be sent by electronic mail via ECF to the e-mail address(es) indicated on the attached service list.

I declare under penalty of perjury under the laws of the State of Oregon that the foregoing is true and correct.

/s/ Bridget M. Donegan
Bridget M. Donegan

Lawrence James Saccato
6387 Old Hwy 99S
Roseburg Oregon 97470
   Plaintiff *pro se*